[Civ. No. 34223.  Second Dist., Div. Two.  Jan. 22, 1970.]

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v.
HARTFORD ACCIDENT AND INDEMNITY CO.,
Defendant and Appellant.

**810**

## COUNSEL

Greenberg & Glusker and Philip Glusker for Defendant and Appellant.

John D. Maharg, County Counsel, and DeWitt W. Clinton, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**WRIGHT, J.**—This action was brought by the County of Los Angeles (the county) against Hartford Accident & Indemnity Company (Hartford) to recover on a surety contract. Summary judgment was entered in favor of the county and Hartford has appealed.

### STATEMENT OF FACTS

The facts in this case are uncontroverted and may be briefly stated.

The owner of a large apartment building in Los Angeles decided to convert it from rental apartments to condominium units. As a condition to recording the final tract map, the owner had to comply with Business and

Professions Code section 11601. That section required him to post a bond insuring payment of all taxes and special assessments collected as taxes which at the time of filing of the map were a lien against the real property but not yet payable. On August 22, 1966, Hartford, as surety, delivered to the county its bond insuring payment of the current 1966-67 taxes on the property. The final tract map was recorded on September 12, 1966. The owner then abandoned his plan and no condominium units were ever sold. The property was subsequently foreclosed and purchased by the holder of the first deed of trust, who in turn conveyed to the present owner.

The property taxes which were insured by the bond were never paid, and the county sued Hartford on the bond to recover them. Hartford cross-complained for subrogation to the first lien position of the county against the property. The county's motion for summary judgment was granted. The cross-complaint is still pending before the trial court.

## ISSUE ON APPEAL

The principal issue on this appeal is whether the actual sale of at least one condominium unit is a condition precedent to Hartford's liability on the bond given pursuant to Business and Professions Code section 11601.[1] Both parties concede, and we agree, that there is no case law on this issue.

## DISCUSSION

Numerous code sections pertinent to the determination of this appeal will be set forth in footnotes so as to facilitate later reference to them.[2]

---

[1]A second issue raised by the parties was whether the county had to first pursue its other remedies before proceeding against Hartford on the bond. In light of our decision that the surety contract is not presently enforceable and that the county may not recover from Hartford, this second issue has become moot.

[2]Business and Professions Code section 11601: "Whenever any part of the subdivision is subject to a lien for taxes or special assessments collected as taxes which are not yet payable, the final map shall not be recorded until the owner or subdivider executes and files with the board of supervisors of the county wherein any part of the subdivision is located, a good and sufficient bond to be approved by the board and by its terms made to inure to the benefit of the county and conditioned upon the payment of all state, county, municipal and local taxes and the current installment of principal and interest of all special assessments collected as taxes, which at the time the final map is recorded are a lien against the property, but which are not yet payable."

*Business and Professions Code section 11604:* "If the taxes or special assessments secured by the bond or deposit are allowed to become delinquent, the county shall recover from the surety the principal sum of the bond without proof of loss."

*Business and Professions Code section 11535.1:* "For purposes of Section 11535, 'subdivision' includes a condominium project, as defined in Civil Code Section 1350, containing five or more condominiums, as defined in Civil Code Section 783 . . . but maps of such projects need not show the buildings or the manner in which the buildings or the airspace above the property shown on the map are to be divided . . . ."

*Civil Code section 783:* "A condominium is an estate in real property consisting of

Hartford's position is based on the following argument: (1) the purpose of the bond was to protect purchasers of individual condominium units from the blanket lien of property taxes against the whole tract for the year in which the tract map was filed; (2) since no condominium units were sold there are no persons in the class to be protected; and (3) since the purpose for which the bond was required has failed the bond itself should therefore be unenforceable.

It is the county's position that the sale or lack of sale of individual condominium units has no bearing on the enforceability of the bond. They argue that the bond insured payment of the taxes, the taxes fell delinquent, the contract of surety is still in effect, and they are therefore entitled to judgment against Hartford. The county supports its contention by referring to the terms of both the contract itself and of the statutes pursuant to which the bond was given. They point out that the contract is unconditional and that Business and Professions Code sections 11601 and 11604 likewise contain no limitations, conditions or exceptions to the surety's liability on such a bond. We would have no quarrel with this argument if the bond had been given to insure the payment of taxes on a normal subdivision. We feel, however, that because of the unique nature of a condominium, the narrow facts of the instant case dictate a contrary result.

■ The purpose of section 11601 of the Business and Professions Code (a portion of the Subdivision Map Act) is to protect the individual lots against the blanket tax lien for the year in which the tract map is recorded. In light of this purpose, the problem presented by this appeal could not arise in the case of a normal subdivision. ■ The recording of a final tract map for a normal subdivision automatically converts what was formerly a single parcel into as many separate lots as appear on the tract map. ■ For the year in which the tract map is filed, the property is assessed as a single parcel to the record owner. The protection of the bond for that year's taxes is necessary because there are individual lots in existence, even if there may

an undivided interest in common in a portion of a parcel of real property together with a separate interest in space in a residential, industrial or commercial building on such real property . . . ."

*Civil Code section 1350:* ". . . 1. 'Condominium' means a condominium as defined in Section 783 of the Civil Code. 2. 'Unit' means the elements of a condominium which are not owned in common with the owners of other condominiums in the project. 3. 'Project' means the entire parcel of real property divided, or to be divided into condominiums, including all structures thereon. 4. 'Common areas' means the entire project excepting all units therein granted or reserved. 5. 'To divide' real property means to divide the ownership thereof by conveying one or more condominiums therein but less than the whole thereof."

*Revenue and Taxation Code section 2188.3:* "Whenever real property has been divided into condominiums, as defined in Section 783 of the Civil Code, (a) each condominium owned in fee shall be separately assessed to the owner thereof, and the tax on each such condominium shall constitute a lien solely thereon . . . ."

not be any individual owners. ■ After the final tract map is recorded, the individual lots will thereafter be separately assessed to their respective record owners for all ensuing years. If the subdivider does not sell any individual lots, he will nevertheless receive as many separate tax bills as there are separate lots. Any subsequent buyer of an individual lot would be concerned only with the taxes on that lot. ■ The individual lots are thus protected from a blanket lien the first year by the bond required by section 11601, and they are protected for all following years by the fact that they are separately assessed. There is therefore no reason for the surety to be relieved of liability on the bond, because the purpose for which the bond was required, to protect individual lots against a blanket tax lien, is present regardless of whether the subdivider actually sells any individual lots.

■ In the case of a condominium project, however, the purpose for which the bond was required does not come into being until at least one individual condominium unit is actually sold. It is true that Business and Professions Code section 11535.1 makes a condominium project a "subdivision" for purposes of the Subdivision Map Act. Thus, before the final tract map can be recorded, the subdivider must post a bond pursuant to section 11601. Unlike a normal subdivision, however, the mere recording of the final tract map does not automatically convert the single parcel of land into as many separate condominium units as appear on the tract map.[3] The reason for this is found in Civil Code section 783, which defines a condominium as an estate in real property consisting of two interests: (1) an undivided interest in common in a portion of a parcel of real property, and (2) a separate interest in space in a building on such real property. There can be no undivided interest in common (and thus by statutory definition there can be no condominium) until at least one condominium unit has been conveyed by the subdivider. Therefore it logically follows that the purpose for which the bond was required (to protect individual condominium units against a blanket tax lien) does not come into existence if no condominium units are ever sold.

■ This difference between a normal subdivision and a condominium project is emphasized by the manner in which the latter is assessed. A condominium project, like a normal subdivision, is assessed as a single parcel to the record owner for the year in which the tract map is filed. Unlike a normal subdivision, however, separate assessment of individual units in the

---

[3]Indeed, section 11535.1 even states that maps of condominium projects "need not show the buildings or the manner in which the buildings or the airspace above the property shown on the map are to be divided." The purpose of this provision is to "exempt condominium projects from certain technical requirements of the Subdivision Map Act not appropriate to 'vertical subdivisions.' " (38 State Bar J. 644, 646.)

ensuing years is not automatic. As required by Revenue and Taxation Code section 2188.3, the property must first be divided into condominiums as defined by Civil Code section 783. Only after the conveyance of at least one unit will each condominium owned in fee be separately assessed. If no units are ever sold, the entire condominium project will continue to be assessed as a single parcel to the record owner, and the taxes for each year will continue to be blanket liens against the property. This is exactly what has happened in the instant case. Since no units were ever sold, the property has remained a unitary parcel and the assessor has continued to send out a single tax bill against the entire tract. Taxes for 1967-68 and 1968-69, as well as those for 1966-67 (the year in which the map was filed), are all blanket liens against the property.

As previously pointed out, in the case of a normal subdivision the purpose for which the bond was required is present regardless of whether any individual lots are actually sold. Since the separate parcels come into existence at the time the final tract map is recorded, and since there is always the possibility of a later purchaser of one of these lots, they must be protected against the blanket tax lien for the year in which the map is recorded. By reason of the fact that the lots will thereafter be individually assessed, there will be no more blanket liens. Thus, even if the first lot is not sold until years later, there will still be no blanket tax liens and the buyer will only have to be concerned with the taxes on his particular lot.

In the case at bar, however, there is not even a condominium in existence to be protected. Furthermore, because the taxes for 1966-67, 1967-68 and 1968-69 are all blanket liens against the property, it is inconceivable that there will be individual purchasers in the future until all of the delinquent taxes are paid. It would be anomalous to permit the county to enforce the bond for the 1966-67 tax year when blanket liens still exist for the 1967-68 and 1968-69 tax years. To do so would in effect be making the county an independent beneficiary of the bond, because the county would not be enforcing it on behalf of the individual lots and individual purchasers for whom the bond was originally furnished. The county is in no way prejudiced by reason of the fact that it is protected by its lien for taxes against the entire parcel.

On the narrow facts of the case at bar, we feel that the logical and equitable solution is to deny the county recovery on the bond. We do not consider the wording of Business and Professions Code sections 11601 and 11604 to be an obstacle where, as here, the statutes were passed long before the recent condominium legislation and where there is nothing to indicate that they anticipated the problem that was presented by the instant case.

The judgment is reversed and the cause remanded to the trial court for further proceedings consistent with this opinion.

Roth, P. J., and Herndon, J., concurred.