Opinion
 

 NEWSOM, J.
 

 In this appeal, we are asked to review the continued validity of
 
 County of Los Angeles
 
 v.
 
 Hartford Acc. & Indem. Co.
 
 (1970) 3 Cal.App.3d 809 [83 Cal.Rptr. 740], with respect to the liability of a surety on a subdivision tax bond required for condominium conversion.
 

 On April 17, 1990, Amador Oaks Partners, as principal, and Golden Eagle Insurance Company (hereafter Golden Eagle), as surety, executed a subdivision tax bond assuring the payment of property taxes for the tax year 1990-1991 on an apartment complex in Alameda County. The bond was required by Government Code section 66493, subdivision (a), as a condition to filing a final tract map of the complex to permit its conversion to condominiums. The map, filed the following day, identified the property as Lot 1, Tract 5872, Map Book 190, pages 27 to 31, Alameda County Records. On April 19, 1990, Amador Oaks Partners sold the property to appellant Metric Institutional Co-Investment Partners II (hereafter Metric). The general partner of Amador Oaks Partners, J. L. Construction Company, Inc., continued to manage the property under a written agreement with the purchasers.
 

 By its terms, the bond bound the surety “unto the County of Alameda” in the sum of $273,955.66 “to assure payment of 1990-91 taxes and assessments which are a lien [on the property] but not payable [at the time the bond was executed]. . . .” The bond recited that the principal was about to file a subdivison map of the property entitled Tract 5872 and that there were no existing liens on the property “except taxes or special assessments not yet payable.” The concluding clause provided: “Now Therefore, if the said principal shall pay on or before December 10, [1990], all taxes and assessments which are now a lien against said tract. . . but not yet payable at the
 
 *1614
 
 time of filing of the map of said tract, then this obligation is to be void and of no effect; otherwise to remain in full force and effect.”
 
 [1]
 

 Metric did not choose to proceed with the process of condominium conversion and sold no individual condominium units. The Tax Collector of Alameda County has continued to tax the property as a single parcel with one tax bill. Nevertheless, Metric demands that Golden Eagle pay taxes for the 1990-1991 tax year in accordance with its obligation under the subdivision tax bond. For its part, Golden Eagle denies any liability under the bond. The 1990-1991 taxes remain unpaid.
 

 On June 18, 1991, Metric filed a complaint in Alameda County Superior Court against Golden Eagle, Amador Oaks Partners and J.L. Construction. Alameda County was named as a nominal defendant pursuant to Code of Civil Procedure section 382. The first cause of action demanded damages for breach of the defendants’ obligations under the subdivision tax bond; the second cause of action for declaratory relief sought a declaration that Golden Eagle was obligated to make immediate payment on the bond. The county subsequently filed a cross-complaint against the other defendants, alleging two causes of action for damages and declaratory relief that sought essentially the same relief as Metric’s complaint.
 

 The trial court sustained without leave to amend Golden Eagle’s demurrer to the first cause of action but denied it in respect to the second cause of action for declaratory relief. The parties then agreed to a statement of undisputed facts and submitted the issue of declaratory relief to the court by means of cross-motions for summary judgment. On November 24,1992, the court granted the motion of Golden Eagle and denied that of the county and Metric. The court expressly based its order on the authority of
 
 County of Los Angeles
 
 v.
 
 Hartford Acc. & Indem. Co., supra,
 
 3 Cal.App.3d 809 (hereafter the
 
 Hartford
 
 decision). The court then entered the judgment in favor of Golden Eagle and against Metric on the complaint and against Alameda County on the cross-complaint. Both Metric and the County filed timely notices of appeal.
 

 Appellants Metric and Alameda County concede that the trial court correctly applied the
 
 Hartford
 
 decision. They contend, however, that the decision was wrongly decided and that its authority was undermined by a recent amendment of Revenue and Taxation Code section 2188.6.
 

 In the
 
 Hartford
 
 case, the owner of an apartment building planned to convert it to condominiums and posted the subdivision tax bond required by
 
 *1615
 
 the predecessor of Government Code section 66493 as a condition to recording the final tract map. The bond obligated the surety, Hartford Accident and Insurance Co., to pay the current 1966-1967 taxes. The owner later abandoned the plan to convert the building to condominiums and no individual units were sold. Taxes remained unpaid. At the time of trial, the taxes for three years—1966-1967, 1967-1968, and 1968-1969—were blanket liens against the entire property. Seeking payment of taxes for the first of these years, the county brought suit against the surety to recover on the subdivision bond. The court held that the surety was not liable on the bond in the absence of any actual division of the property into individual units subject to separate assessment.
 

 The
 
 Hartford
 
 court considered that the purpose of the subdivision tax bond “is to protect the individual lots against the blanket tax lien for the year in which the tract map is recorded.”
 
 (County of Los Angeles
 
 v.
 
 Hartford Acc. & Indem. Co., supra,
 
 3 Cal.App.3d at p. 813.) In the case of a normal subdivision, the purpose of the bond is served, whether or not individual lots are sold. “The recording of a final tract map for a normal subdivision automatically converts what was formerly a single parcel into as many separate lots as appear on the tract map. . . . The protection of the bond for [the year in which the tract map is filed] ... is necessary because there are individual lots in existence, even if there may not be any individual owners. . . . If the subdivider does not sell any individual lots, he will nevertheless receive as many separate tax bills as there are separate lots. Any subsequent buyer of an individual lot would be concerned only with the taxes on that lot. The individual lots are thus protected from a blanket lien the first year by the bond . . . and they are protected for all following years by the fact that they are separately assessed.”
 
 (Id.
 
 at pp. 813-814.)
 

 In contrast, the recording of a final tract to a proposed condominium does not automatically result in separate assessment of individual units. Revenue and Taxation Code section 2188.3 provides that condominium units are to be separately assessed only after the property has been divided into condominiums as defined in Civil Code section 783 which in turn incorporates by reference Civil Code section 1351, subdivision (f). The latter statute defines a condominium as having “an undivided interest in common in a portion of real property . . . .” As construed by the
 
 Hartford
 
 decision, “[t]here can be no undivided interest in common (and thus by statutory definition there can be no condominium) until at least one condominium unit has been conveyed
 
 *1616
 
 by the subdivider.” (3 Cal.App.3d at p. 814.)
 
 [2]
 
 Hence, “[o]nly after the conveyance of at least one unit will each condominium owned in fee be separately assessed. If no units are ever sold, the entire condominium project will continue to be assessed as a single parcel to the record owner, and the taxes for each year will continue to be blanket liens against the property.”
 
 (Id.
 
 at p. 815.)
 

 The
 
 Hanford
 
 court considered that the county could recover on the bond “if the bond had been given to insure the payment of taxes on a normal subdivision.” (3 Cal.App.3d at p. 813.) Then, “. . . the purpose for which the bond was required is present regardless of whether any individual lots are actually sold. Since the separate parcels come into existence at the time the final tract map is recorded, and since there is always the possibility of a later purchaser of one of these lots, they must be protected against the blanket tax lien for the year in which the map is recorded.”
 
 (Id.
 
 at p. 815.)
 

 But where the bond is given to insure payment of taxes on property described in the tract map of a condominium, the county could not enforce the bond where it did not serve the purpose of protecting individually assessed lots from the blanket tax lien. The court reasoned, “In the case at bar . . . there is not even a condominium in existence to be protected. . . . It would be anomalous to permit the county to enforce the bond for the 1966-67 tax year when blanket liens still exist for the 1967-68 and 1968-69 tax years. To do so would in effect be making the county an independent beneficiary of the bond, because the county would not be enforcing it on behalf of the individual lots and individual purchasers for whom the bond was originally furnished.” (3 Cal.App.3d at p. 815.)
 

 Appellant criticizes the
 
 Hanford
 
 decision on three grounds. First, they maintain that the court ignored the plain language of the predecessor of Government Code section 66494, subdivision (a) (formerly Bus. & Prof. Code, § 11604), which unambiguously permits the county to bring an action against the surety if the taxes insured by the bond become delinquent. Secondly, they contend that the
 
 Hanford
 
 decision failed to recognize certain secondary interests that would be served by following the plain terms of Government Code section 66494, such as the prompt collection of taxes, equal treatment of subdividers, and an orderly process of subdivision protecting prospective purchasers. Thirdly, they argue that in avoiding one anomaly the court created others. The county’s remedies for collection of
 
 *1617
 
 taxes now differ significantly depending on whether the final tract map is recorded before or after November 1—the date on which real property taxes first become due and payable for the current fiscal year. Again, subdividers who post a bond are favored over those who deposit “money, negotiable bond or instrument of credit” as security pursuant to Government Code section 66494, subdivision (b).)
 

 Acknowledging that these criticisms are forceful, we nevertheless believe they do not justify a reconsideration of the
 
 Hartford
 
 decision. “Respect for our colleagues and the orderly administration of justice—as well as the need of the trial bench, bar and litigants for certainty in the development of the common law—dictate that there be a compelling reason” for departing from a decision of another Court of Appeal.
 
 (Opsal
 
 v.
 
 United Services Auto. Assn.
 
 (1991) 2 Cal.App.4th 1197, 1203-1204 [10 Cal.Rptr.2d 352].) “Mere disagreement with the result or reasoning of an earlier decision does not, in our view, constitute a compelling reason.”
 
 (Id.
 
 at p. 1204.)
 

 “ ‘[C]ertainty, predictability and stability in the law are the major objectives of the legal system . . . .’ ”
 
 (Moradi-Shalal
 
 v.
 
 Fireman’s Fund Ins. Companies
 
 (1988) 46 Cal.3d 287, 296 [250 Cal.Rptr. 116, 758 P.2d 58].) As observed by Justice Lewis Powell, stability “is especially important in cases involving property rights and commercial transactions.” (Powell,
 
 Stare Decisis and Judicial Restraint,
 
 1991 J.Supreme Ct.Hist. 13.) The
 
 Hanford
 
 decision has been noted by leading commentaries on the process of condominium conversion (Curtin et al., Cal. Subdivision Map Act Practice (Cont.Ed.Bar 1987) p. 192; 7 Miller & Starr, Current Law of Cal. Real Estate (1990 2d ed.) § 20:129, pp. 370-371; 54 Cal.Jur.3d, Real Estate Sales § 599, p. 804, fn. 56; 11 B Appleman, Insurance Law and Practice (1981) § 6800.25, p. 132.) The holding was applied to an analogous situation in
 
 Wright Development Co.
 
 v.
 
 City of Mountain View
 
 (1975) 53 Cal.App.3d 274, 277 [125 Cal.Rptr. 723], and a critical portion of the opinion, discussing the statutory definition of a condominium, was cited with approval in
 
 City of West Hollywood
 
 v.
 
 Beverly Towers, Inc., supra,
 
 52 Cal.3d 1184, 1190. Since it has enjoyed such general acceptance, the decision has entered into the expectations of the parties in securing and issuing subdivision tax bonds.
 
 (California Assn. of Highway Patrolmen
 
 v.
 
 Department of Personnel Admin.
 
 (1986) 185 Cal.App.3d 352, 364 [229 Cal.Rptr. 729].) Whether or not its reasoning was sound, considerations of jurisprudential policy dictate that it should be respected and followed as a precedent.
 

 Nevertheless, the 1990 amendment of Revenue and Taxation Code section 2188.6 does require a reexamination of how the
 
 Hartford
 
 decision is
 
 *1618
 
 to be applied today. The amendment establishes new rules for the separate assessment of individual parcels of a condominium which restrict the significance of the first conveyance. It provides: “(a) Unless a request for exemption has been recorded pursuant to subdivision (d), prior to the creation of a condomiunium as defined in Section 783 of the Civil Code, the county assessor may separately assess each individual unit which is shown on the condominium plan of a proposed condominium project when all of the following documents have been recorded as required by law: (1) A subdivision final map or parcel map, as described in Sections 66434 and 66445, respectively, of the Government Code. (2) A condominium plan, as defined in subdivision (e) of Section 1351 of the Civil Code. (3) A declaration, as defined in subdivision (h) of section 1351 of the Civil Code. ...(d) The record owner of the real property may record with the condominium plan a request that the real property be exempt from separate assessment pursuant to this section. If a request for exemption is recorded, separate assessment of a condominium unit shall be made only in accordance with Section 2188.3.”
 
 [3]
 

 The procedure for the separate assessment of individual units of a condominium, which applied when the
 
 Hartford
 
 decision was rendered, is now reduced to an option of the record owner. Under Revenue and Taxation Code section 2188.6, subdivision (d), the owner may request an exemption from separate assessment; then, as was the case before amendment of section 2188.6, the separate assessment will be governed by section 2188.3. The application of the latter section, as we have seen, hinges on the statutory definition of a condominium in Civil Code section 783, which makes the creation of a condominium dependent on at least one conveyance.
 

 Where the owner does not request exemption, the first sale of a condominium unit becomes irrelevant to the question of separate assessment of individual units. The county assessor has discretionary authority to separately assess individual units upon the recording of three documents: the final tract map, the condominium plan, and the declaration required by Civil Code section 1351, subdivision (h).
 

 We read the
 
 Hartford
 
 decision as holding that the liability of the surety on the bond is conditioned on the separate assessment of individual units in the condominium. Since the bond serves to protect purchasers of individual lots from the blanket tax lien, it cannot be enforced so long as the property described in the tract map is assessed as a single parcel and remains subject
 
 *1619
 
 to a blanket tax lien. Prior to the amendment of Revenue and Taxation Code section 2188.6, the county had no authority to separately assess individual units in a condominium tract map until at least one condominium unit was conveyed; now, section 2188.6 provides more complex rules which may lead to separate assessment merely upon the filing of the final documents for condominium conversion.
 

 Although the present transaction is subject to the amendment of Revenue and Taxation Code section 2188.6, we find no evidence that Metric has satisfied the new statutory requirements for separate assessment of the property or that the county has chosen to separately assess the individual units in the tract. The joint statement of undisputed facts merely states: “17. At all times since April 17,1990, the Property has remained a unitary parcel. 18. At all times since April 17, 1990, the Tax Collector of Alameda County has taxed the Property as a single parcel with one tax bill.”
 

 Following the
 
 Hartford
 
 decision, we hold that the county’s right to recover on the subdivision tax bond is conditioned on separate assessment of individual units described in the tract map. (See
 
 Los Angeles Co.
 
 v.
 
 Central S. &
 
 I.
 
 Corp.
 
 (1936) 12 Cal.App.2d 414 [55 P.2d 545]; Gov. Code, § 66494, subd. (a).) In the absence of evidence that the individual units in Tract 5872 have been separately assessed, appellant is not entitled to the relief prayed for in the complaint.
 

 The judgment is affirmed.
 

 Strankman, P. J., and Stein, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied February 16, 1995.
 

 [1]
 

 Although the bond reads December 10, 1991, the parties stipulate that this date was a clerical error and should have been December 10, 1990.
 

 [2]
 

 The Supreme Court quotes the
 
 Hartford
 
 decision with approval on this point in
 
 City of West Hollywood
 
 v.
 
 Beverly Towers, Inc.
 
 (1991) 52 Cal.3d 1184, 1190 [278 Cal.Rptr. 375, 805 P.2d 329].)
 

 [3]
 

 The former Revenue and Taxation Code section 2188.6 allowed “the initial seller or purchaser of an individual unit in a condominium project” to request by November 1 that the unit be separately assessed. (Stats. 1978, ch. 1145, § 1, pp. 4053-4054.)