[Civ. No. 13678.   First Dist., Div. Two.   Oct. 21, 1948.]

MILDRED BREITMAN et al., Respondents, v. ELSA GATTMAN et al., Appellants.

Jack Flinn and John A. Foley for Appellants.

J. Bruce Fratis for Respondents.

GOODELL, J.—This appeal was taken from a judgment decreeing specific performance of a contract for the sale of a piece of hotel property on Van Ness Avenue in San Francisco.

On December 29, 1945, Louis T. Samuels Company, acting as agent for the seller, negotiated a contract for the sale of the property by appellant Elsa Gattman to respondents for $42,500. The contract acknowledged receipt of a deposit of $1,000 and provided: ''Deposit to be increased to $2,000.00 on the tenth . . . day of January 1946.'' This increased deposit was not made on that day, but on the next day respondents gave the agent their check for $1,000 and that afternoon he took it to Mrs. Gattman, who refused it because it was not in time. She then declined to go forward with the sale.

On January 30, 1946, she sold the property to the appellants Neal and Marie McNeil at a price in advance of the respondents' contract. The McNeils had knowledge of the respondents' contract.

The court relieved the respondents from their default under the rule of section 3275, Civil Code, which reads: "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

Appellants state their principal contention as follows: "Plaintiffs' rights under agreement of sale were forfeited by their failure to make the deposit at the time called for." They base this on the provision in the contract that "Time is of the essence of this agreement" and invoke section 1490, Civil Code, which provides that "Where an obligation fixes a time for its performance, an offer of performance must be made at that time, within reasonable hours, and not before nor afterwards."

Whether the action of the court in relieving respondents from their default was correct or not, is the only question which has to be decided, and that question calls for an inquiry into the circumstances attending the default.

The contract provides that the sale is subject to two leases. The lease for the upper floors was hard to locate, and the seller's agent went over it with respondents in the late afternoon of the 10th. That examination disclosed that the monthly rental was less than the rental shown on the statement theretofore furnished by the seller's agent. This discrepancy caused some deliberation between the two respondents, but late that afternoon they decided to go ahead notwithstanding the lower rental return and then informed the seller's agent to that effect and that they were prepared to pay the entire remaining $41,500 into the title company at once and they requested him to obtain the deed. The testimony on behalf of respondents shows that their preoccupation in the examination of the lease and the attention centered on this discrepancy diverted both the agent and the respondents from the requirement that the additional deposit was due that day. This testimony is not disputed, although Mrs. Gattman claimed that she was blameless for the delay

in getting hold of the lease. Indeed appellants do not contend that the respondents' breach of duty was grossly negligent or wilful or fraudulent. They stand on the stark fact of failure to pay on the 10th. The court found that the payment on the 11th instead of the 10th of January "was a technical default and that said breach of contract was neither grossly negligent, wilful or fraudulent, but, on the contrary, was due to the failure of defendant Elsa Gattman to produce for the inspection of plaintiffs one of the two outstanding leases on the premises until January 10, 1946."

Appellants do not attack the sufficiency of the evidence to support any part of this finding. The last phrase thereof, attributing the default to Mrs. Gattman's delay in producing the lease for examination by respondents, brings the case within the holding in *Henck* v. *Lake Hemet Water Co.*, 9 Cal.2d 136 [69 P.2d 849].

Appellants rely on *Glock* v. *Howard etc. Co.*, 123 Cal. 1 [55 P. 713, 69 Am.St.Rep. 17, 43 L.R.A. 199] since the contract in suit makes time essential, but with respect to that question the court in the Lake Hemet case says (p. 143) : "It was recognized in *Glock* v. *Howard* . . . that equity will relieve a party from the effect of a breach of a covenant to pay upon a day certain upon the showing of fraud, mistake, surprise or other ground of purely equitable cognizance excusing the breach, where damages on account of the breach can be accurately measured and compensation made by the allowance of interest [citation]." And at page 144 the court says: "Furthermore, even assuming that time should be deemed an essential element in the contract, nevertheless it may be said that under the pertinent authorities hereinabove cited, the interposition of equity to grant relief under the facts was justified by the showing that for two years the water company, immediately preceding the due date, notified the plaintiff of the amount due for the ensuing year, and that the plaintiff's failure to make payment on January 2, 1934, was excusable because it was in part if not largely induced or provoked by the defendant's own conduct. (*Collins* v. *Eksoozian, supra* [61 Cal.App. 184 (214 P. 670)].)" There seems to be no difference between the water company's failure there to send out the customary notice of the due date, and Mrs. Gattman's delay here in producing the lease.

In the Lake Hemet case at page 144 this also is said: "The theory upon which the courts hold that in such cases time is

of the essence, is that damage resulting to the seller by reason of delay in performance on the part of the purchaser cannot be estimated nor compensated [citations]."

In the same connection, in *Vorwerk* v. *Nolte,* 87 Cal. 236, 240 [25 P. 412], (cited in *Glock* v. *Howard etc. Co.,* 123 Cal. 9 [55 P. 713, 69 Am.St.Rep. 17, 43 L.R.A. 199]), it is said: "It is a matter of common understanding that when these words—'time is of the essence of this contract'—are used, it is with reference to future payments; that *their purpose is to protect the vendor against delays in payment of the purchase price, and the tying up of his estate beyond the fixed period, without the payment of the agreed compensation therefor*; . . ." (Emphasis added.)

The contract in suit contains the following provision: "45 days from the date of approval are allowed the purchaser to examine the title to said property and to report in writing any valid objections thereto, to the agent for the seller. If no such objections to title be reported the balance of said purchase price shall be paid by said purchaser on or before the expiration of said time . . ." The additional deposit of $1,000 due on January 10 was of course part of the purchase price which had to be paid (to make up the total of $42,500) before the vendees could call on the vendor for a deed, but the vendees had, under the contract, several weeks after January 10 within which to satisfy themselves with respect to the title and consummate the sale, hence the delay of but one day could not possibly have held up the transaction or tied up the vendor's estate "beyond the fixed period, without the payment of the agreed compensation therefor" (*Vorwerk* v. *Nolte, supra*).

In addition to the Lake Hemit case there are other authorities which discuss *Glock* v. *Howard etc. Co.* in connection with forfeitures or the time clause. Among them are *Ebbert* v. *Mercantile Trust Co.,* 213 Cal. 496, 500 [2 P.2d 776]; *McDonald* v. *Kingsbury,* 16 Cal.App. 244, 248 [116 P. 380] (where time was of the essence); *Leak* v. *Colburn,* 55 Cal.App. 784, 788 [204 P. 249] and *Culligan* v. *Leider,* 65 Cal.App.2d 51, 59 [149 P.2d 894].

In the Lake Hemet case the default had continued for nine days. In *Fickbohm* v. *Knaust,* 103 Cal.App. 443 [284 P. 692], (where time was of the essence) the court granted relief from defaults in the payment of *two* monthly installments. In *Leslie* v. *Federal Finance Co.,* 14 Cal.2d 73 [92 P.2d 906],

the default continued for eight days. In reversing the judgment the court said: "There is no evidence that the respondent suffered any substantial prejudice as a result of the delay or that full compensation could not have been made for the delay. Under these circumstances it was the duty of the court to grant appellant the relief she sought." The court followed *Hopkins* v. *Woodward*, 216 Cal. 619 [15 P.2d 499], and the Ebbert and Lake Hemet cases.

The trial court found "that the increase in deposit . . . was paid by plaintiffs to defendant Elsa Gattman on January 11, 1946." The contract provides for payments on the purchase price to be made to a title company "or to the office of Louis T. Samuels Co." the seller's agent. The check of M. Breitman dated January 11, 1946, payable to Elsa Gattman for $1,000 for "add. deposit on Clinton Hotel" was delivered by respondents to Mr. Samuels on the 11th and was taken by him to Mrs. Gattman that afternoon. There was no dispute as to that, but it is also true that she refused to accept it. The check is in evidence. The respondents, then, did all they could on the 11th, toward meeting their obligation of the day before.

We are satisfied that the court was correct in relieving the respondents from their default. Such holding renders it unnecessary to discuss the findings dealing with the authority of the agent to accept the belated check and touching the question of waiver. In other words, if the default was properly excused and if the $1,000 was either paid or tendered on January 11th, the other questions and the findings thereon become immaterial. (2 Cal.Jur. pp. 1028, 1029.)

The action of the court in granting relief from what it found to be a "technical default" is supported by a large number of cases. In addition to those already cited which discuss *Glock* v. *Howard etc. Co.* and the time clause there are several late cases illustrating the readiness of courts to grant relief from forfeitures, for instance *O'Morrow* v. *Borad,* 27 Cal.2d 794, 800 [167 P.2d 483] where the court restates the rule that "Forfeitures, . . . are not favored; hence a contract, and conditions in a contract, will if possible be construed to avoid forfeiture . . . And where, . . . the condition is express and cannot be avoided by construction, the court may, in a proper case, excuse compliance with it or give equitable relief against its enforcement . . ." (Citing the Lake Hemet, Hopkins and Ebbert cases, *supra,* and *Ballard* v. *MacCallum,* 15 Cal.2d 439, 444 [101 P.2d 692].)

There is nothing in *Christin* v. *Story*, 119 Cal.App. 326 [6 P.2d 301], cited by appellants, which militates against the views expressed herein. There earlier defaults were waived by acceptance of overdue payments, after which there was a revival by the giving of notice requiring strict performance, and then a final notice. The defendant made no case under section 3275, Civil Code for he did "nothing to entitle him to relief under that section." Here, however, the $1,000 was tendered within 24 hours after the respondents' technical default.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.