[Civ. No. 29340. Fourth Dist., Div. Two. Aug. 17, 1983.]

VALLEY VIEW HOME OF BEAUMONT, INC.,
Plaintiff and Respondent, v.
DEPARTMENT OF HEALTH SERVICES, Defendant and Appellant.

162

Counsel

John K. Van de Kamp, Attorney General, Thomas E. Warriner, Assistant Attorney General, Anne S. Pressman and Henry Torres, Jr., Deputy Attorneys General, for Defendant and Appellant.

Weissburg & Aronson and Patric Hooper for Plaintiff and Respondent.

Opinion

McDANIEL, J.—Valley View Home of Beaumont (Valley View), a licensed Medi-Cal service provider, claims money due from the state for services rendered to Medi-Cal beneficiaries without first having submitted reauthorization request forms as required by the applicable regulations. In the action to enforce such claims, the trial court entered judgment for Valley View. The state appealed, and we shall affirm.

FACTS

A. *Statutory and Regulatory Scheme*

Medi-Cal provides health care services to recipients of public assistance and to certain other categories of poor persons. (Welf. & Inst. Code, § 14000.) Such services include intermediate care services for developmentally disabled patients (ICF/DD Services). (Welf. & Inst. Code, § 4500 et seq.; Cal. Admin. Code, tit. 22, § 51343.) To qualify for intermediate care services, a patient must have a medical condition which requires an out-of-home protective living arrangement with 24-hour supervision and skilled nursing home care or observation on an ongoing intermittent basis to abate health deterioration. Intermediate care services emphasize care aimed at preventing or delaying acute episodes of physical or mental illness and encouragement of individual patients' independence. (Cal. Admin.

Code, tit. 22, § 51334, subd. (*l*).) The legislative purpose in providing services for the developmentally disabled is to enable them to lead "more independent, productive, and normal lives." (Welf. & Inst. Code, § 4750.)

Persons with developmental disabilities are placed in intermediate health care facilities through the efforts of "regional centers." These centers are private nonprofit corporations which contract with the Department of Health Services to locate persons with developmental disabilities in the community, assess their individual developmental and health care needs, and place them in an appropriate health care facility. (Welf. & Inst. Code, §§ 4620, 4640-4658; 62 Ops.Cal.Atty.Gen. 229 (1979).)

The Social Security Act requires that participating states establish "utilization" controls to ensure that Medicaid (Medi-Cal in California) funds are paid only for medically necessary services. States must "provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of . . . care and services." (42 U.S.C. § 1396a(a)(30); see also 42 C.F.R. § 456.3 (1982).) Accordingly, the California Legislature has made certain utilization controls available to the Department of Health Services (Department) so that they may monitor and review the various kinds of health services provided to Medi-Cal beneficiaries. These controls include (1) prior authorization, which is approval by a Medi-Cal consultant of a specified service in advance of the rendering of that service based upon a determination of medical necessity, and (2) postservice prepayment audit, which is review for medical necessity after service is rendered but before payment is made. (Welf. & Inst. Code, § 14133; Cal. Admin. Code, tit. 22, § 51003.) Because authorization is generally granted for a limited period of time, reauthorization is periodically required if the provision of services extends beyond the expiration date of the previous period. (Cal. Admin. Code, tit. 22, § 51003, subd. (c).)

The rendering of health care services to the developmentally disabled is expressly "subject to prior authorization by the Department." (Cal. Admin. Code, tit. 22, § 51343, subd. (a).) Prior authorization is obtained by having the health care provider submit a treatment authorization request form (TAR) to a Medi-Cal consultant prior to providing the desired service to a Medi-Cal patient. When the treatment or service is approved, the provider receives a signed copy of the TAR form reflecting the consultant's authorization of such services. Because the condition of many of the patients at intermediate care facilities for the developmentally disabled remains consistent over long periods of time, such facilities need only submit requests for reauthorization of services every six months. However, requests for reau-

thorization of services must be submitted on or before the first working day following expiration of the previous authorization period. If the request for reauthorization is not received on time, "one day of authorization shall be denied for each day the reauthorization request is late." (Cal. Admin. Code, tit. 22, § 51343, subds. (a) and (b).)

## B. *Facts of the Underlying Action*

Valley View is a California corporation licensed by the state Department of Health Services to provide intermediate care services for the developmentally disabled. To participate in Medi-Cal, Valley View entered into a "provider agreement" with the Department which required that services be rendered to Medi-Cal patients in accordance with Medi-Cal statutes and regulations in return for the Department's payment for such services at a daily rate per patient. (Cal. Admin. Code, tit. 22, §§ 51212, 51510.1.)

Fifty-six of Valley View's fifty-seven patients were Medi-Cal beneficiaries in October of 1980. Each of these Medi-Cal patients had been placed in Valley View by a regional center for the purpose of receiving ICF/DD services. As is generally the sad case with such patients, many of Valley View's residents had been there for years, periodically receiving reauthorization for the same level of care.

Valley View was one of eight health care facilities managed by the Newport Harbor Management Company. The monitoring system used by Valley View to ensure that the TAR's were submitted on time consisted of a central billing office operated by Newport Harbor Management, which office communicated directly with a billing clerk who worked at Valley View.

The 6-month period of authorization for 54 of Valley View's 56 Medi-Cal patients was due to expire on September 30, 1980. Helen Turnbull, the central billing clerk for Newport Management during the period in question, testified that she communicated directly with the Valley View billing clerk at least twice before October 1, 1980, regarding the need to submit the new TAR's on time. Turnbull stated that the billing clerk assured her the new TAR's had been submitted. However, late on the afternoon of Friday, October 17, 1980, the new TAR's were discovered in a desk drawer of Valley View's billing clerk. The billing clerk had unaccountably stopped coming to work a day or two before and has not been seen since.

The record is unclear as to what precisely alerted Valley View to the fact that the TAR's had not been timely submitted, although it may have been the failure to receive their customary copy of the TAR authorization. In any

event, on the following Monday, October 20, 1980, the TAR's were submitted to the Medi-Cal consultant. The requested treatment was authorized for all 54 patients as of October 20, 1980. However, authorization for the services rendered between October 1 and October 19, 1980, was denied pursuant to the regulation which requires that one day of authorization be denied for each day that the TAR is late. (Cal. Admin. Code, tit. 22, § 51343, subd. (b).)

Valley View appealed the consultant's refusal to authorize the services rendered between October 1 and October 20, and requested that the services in question be approved retroactively. Valley View's appeal was denied by the Department, and its claim before the State Board of Control was rejected.[1] Having exhausted its administrative remedies, Valley View then filed a complaint against the Department, stating causes of action for breach of contract, substantial performance and quasi-contract, and also seeking a declaratory judgment that the regulations in question constitute an unlawful forfeiture, an unconstitutional taking without just compensation, an unauthorized departure from the Medi-Cal statutory scheme, and also are "irrational, arbitrary and capricious."

After a one-day trial, the court entered judgment for Valley View and awarded damages of $36,027.18 plus interest (the value of the medical services rendered from October 1 to October 19, 1980). The Department then appealed, contending that the regulations in question are valid, and also alleging that Valley View (1) is not entitled to quasi-contractual relief, (2) has not substantially performed its obligations under the provider agreement, and (3) is collaterally estopped from asserting any claim for recovery.

## DISCUSSION

A preliminary comment about the Department's collateral estoppel claim is in order. The Department contends that Valley View is "in privity" with six incorporated nursing homes in California who were involved in a separate litigation which raised legal issues similar to those presented herein. This litigation resulted in an unpublished opinion from the Second District Court of Appeal, *Beverly Enterprises* v. *William B. Mayer* (Dec. 1, 1981)

---

[1]At the time of the events in question, retroactive approval of requests for reauthorization was limited to four restricted situations which are not relevant here (Cal. Admin. Code, tit. 22, § 51003, subd. (b)). The regulation was subsequently amended to permit retroactive approval if the late submission was caused by circumstances beyond the control of the provider. Such circumstances do *not* include employee negligence. (Cal. Admin. Code, tit. 22, § 51003, subd. (b), as amended eff. June 3, 1981.) However, because our decision herein does not rest upon interpretation of the regulations, but rather upon Civil Code, section 3275, the amendment is not particularly relevant to our determination.

2 Div. 61991. On the basis of the *Beverly* decision, the Department contends that Valley View is collaterally estopped from asserting any claim for recovery; the Department has cited and appended this decision in its opening brief.

It is undisputed that Valley View has *no connection whatsoever* with any of these six nursing homes. Nevertheless, the Department astoundingly contends that these nursing homes and Valley View are "in privity" because they represent "the same legal right." (4 Witkin, Cal. Procedure, Judgment, § 226, p. 3359, quoting *Zaragosa v. Craven* (1949) 33 Cal.2d 315, 318 [202 P.2d 73, 6 A.L.R.2d 461].)

It is evident that the Department has either profoundly misunderstood the law, confusing the rule of stare decisis with the law of privity and collateral estoppel, or has *wilfully* breached a fundamental Rule of Court which prohibits the citation of unpublished opinions unless the opinion is relevant under the doctrines of law of the case, res judicata, or collateral estoppel. (Cal. Rules of Court, rule 977.)

Giving the Department the benefit of the doubt, we assume that the former explanation accounts for this otherwise flagrant impropriety, and will withhold the imposition of sanctions. In any case the contention of collateral estoppel is wholly without merit, if not specious.

Turning to the next contention: in response to the Department's request for a written statement of decision, the trial court stated in a letter dated July 20, 1982, that it did not have jurisdiction, after entering the judgment, to reopen for a statement of reasons, but nevertheless went on to state: "In any event, I adopt my statements made to you from the bench. Regardless of its rules, it would be unfair for the State to exact a forfeiture and receive the benefit of its dependent children's care without pay. The converse would be to follow the letter, but not the spirit, of the laws that provide care for these children in the first place."

Although the trial court clearly stated that its decision was grounded in the law of forfeiture, the Department has devoted the bulk of its appellate energies to demonstrating that Valley View was not entitled to judgment under the theories of quantum meruit and substantial performance. Because we see no good reason for disturbing either the judgment of the trial court or the reasoning upon which its judgment was based, our discussion will be limited to the question of whether, on the facts presented, Valley View was entitled to relief from a loss in the nature of a forfeiture.

Section 3275 of the Civil Code provides: "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

■ Where the circumstances and equities of the case are compelling, the courts of this state have freely applied the statute, through construction when possible and through excuse from enforcement when necessary: "Forfeitures . . . are not favored; hence a contract, and conditions in a contract, will if possible be construed to avoid forfeiture [citations] . . . . ■ And where, . . . the condition is express and cannot be avoided by construction, the court may, in a proper case, excuse compliance with it or give equitable relief against its enforcement. [Citations.]" (*O'Morrow* v. *Borad* (1946) 27 Cal.2d 794, 800-801 [167 P.2d 483, 163 A.L.R. 894]; *Breitman* v. *Gattmann* (1948) 88 Cal.App.2d 124, 128 [198 P.2d 311]; see also Rest., Contracts, § 302.) Relief from forfeiture when the facts and equities militate in favor thereof may be granted even when the party seeking it has violated an express condition precedent, such as where time is made of the essence. (*Henck* v. *Lake Hemet Water Co.* (1937) 9 Cal.2d 136, 143 [69 P.2d 849]; *Leslie* v. *Federal Finance Co., Inc.* (1939) 14 Cal.2d 73, 80 [92 P.2d 906].)

■ The trial court here stated that the equities did not favor the state, and concluded that a gross injustice would arise if Valley View were not relieved from the Department's regulation. In our view, the trial court's conclusion was correct.

Valley View's failure to submit the new TAR's on time was indisputably the result of negligence on the part of its billing clerk. At worst, Valley View was also negligent in failing to exercise adequate controls over its own billing process. However, the trial court was of the view that Valley View's omission was not grossly negligent, wilful, or fraudulent, and the record fully supports that finding.

Furthermore, before October 1, 1980, the regional center had actually approved the services requested in the new TAR's. While authorization by the regional center does not satisfy the Department regulation, it is considered by the Medi-Cal consultant in reviewing the request for treatment authorization. Moreover, the Department itself has stipulated to the fact that the requested medical services during the omitted period in question *were medically necessary*. Hence, there is not even a suggestion of fraud in this case.

Notwithstanding the fact that medical services for Valley View's disabled patients were medically necessary during the period in question, the Department argues that its system of administrative controls must admit of *no* exceptions if the system is to remain viable. We cannot agree that an administrative system must be mindless in order to be efficient. Indeed, the reverse is true. It is precisely *because* impersonal agencies govern so many sensitive facets of our lives, such as health and welfare, that administrative personnel must be particularly sensitive to the exceptional circumstance and accommodative of human error.

The unique facts of this case underscore this point. The condition of the patients in Valley View does not often change. The Department knows this. Upon receipt of the new TAR's, the Department duly authorized the same level of health care which it had regularly reauthorized for several years prior to October 1, 1980. As already noted, there was no hint of fraud. Hence, the Department cannot credibly argue, with respect to *these* patients and *this* particular procedural irregularity, that its oversight authority would be seriously compromised by forgiving Valley View this particular error.

We are not insensitive to the absolute centrality of utilization controls in the Medi-Cal system. Administrative efficiency and the prevention of waste and fraud literally depend upon the vigorous application of such controls. Thus, had Valley View's omission been the result of gross negligence rather than mere clerical inadvertence, had the TAR's been for outpatient beneficiaries whose prognosis was subject to frequent change rather than for the developmentally disabled whose condition rarely changed, or had there been even the slightest suggestion of fraud, waste or financial impropriety, the result here might well have been different.

However, the equities of *this* case clearly militate in favor of relaxing the harshness of the departmental regulation. The exercise of administrative controls must be vigorous, but not ruthless. Therefore, we hold that the trial court here properly relieved Valley View from a loss in the nature of a forfeiture.

■ The Department appears to argue that equitable remedies will not lie against a public entity. This is not the law. (See e.g., *Sacramento Co.* v. *Southern Pac. Co.* (1899) 127 Cal. 217, 222-223 [59 P. 568], overruled on other grounds, *Miller* v. *McKinnon* (1942) 20 Cal.2d 83, 90-92 [124 P.2d 34, 140 A.L.R. 570].) The Department cites cases which merely denied recovery in quantum meruit in situations where the public entity in question entered into a contract which it lacked the authority to make. The situation herein is not even arguably analogous.

### Disposition

The judgment is affirmed.

Kaufman, Acting P. J., and Rickles, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 1, 1983.