[No. A080227. First Dist., Div. Three. Oct. 7, 1998.]

LAUDERDALE ASSOCIATES, Plaintiff and Respondent, v.
DEPARTMENT OF HEALTH SERVICES et al., Defendants and
Appellants.

118

**COUNSEL**

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Charlton G. Holland, Assistant Attorney General,

Stephanie H. Wald and Ralph M. Johnson, Deputy Attorneys General, for Defendants and Appellants.

Rapp, Kiepen & Harman, Roland G. Rapp, Scott J. Kiepen and Scott J. Harman for Plaintiff and Respondent.

Catherine I. Hanson, Astrid G. Meghrigian, Foley & Lardner, J. Mark Waxman, Mark E. Reagan and Gregory D. Hendrickson as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**WALKER, J.**—The Department of Health Services and its director, Kimberly Belshé (collectively, the Department), appeal the trial court's judgment for Lauderdale Associates, which does business as Alhambra Convalescent Hospital (Alhambra), in Alhambra's action seeking breach of contract damages and equitable relief. The court determined that Alhambra is entitled to retroactive Medi-Cal reimbursement from the Department for skilled nursing services provided to three patients at Alhambra. The Department contends that: (1) we should reject the equitable doctrine permitting recovery as articulated in *Valley View Home of Beaumont, Inc.* v. *Department of Health Services* (1983) 146 Cal.App.3d 161 [194 Cal.Rptr. 56] (*Valley View*), and upon which the trial court based its decision; (2) regardless of its validity, *Valley View* does not apply to the facts of this case; and (3) the trial court abused its discretion because the uncontradicted evidence shows that Alhambra acted with gross negligence. We decline the Department's invitation to reject *Valley View* and disagree with its remaining contentions. We affirm.

### BACKGROUND

Under federal law, states must implement a utilization control program to ensure that Medicaid funds are paid only for medically necessary services. (42 U.S.C. § 1396a(a)(30).) Toward this end, California has established Medicaid utilization controls for its Medi-Cal program, including a prior authorization program, which approves Medi-Cal services before they are rendered, and a postservice prepayment audit, which reviews for medical necessity the services rendered before payment. (Welf. & Inst. Code, § 14133; Cal. Code Regs., tit. 22, § 51003.) A health care provider obtains prior approval of services for a Medi-Cal patient by submitting a "treatment authorization request" (TAR) to a consultant in the local Medi-Cal field office. (Cal. Code Regs., tit. 22, § 51003.) The consultant determines

whether the proposed services are medically necessary, and, if services are approved, the health care provider receives an approved copy of the TAR. (*Ibid.*) Retroactive approval of a TAR for services previously rendered may be granted under certain limited circumstances not applicable to the facts of this case. (See Cal. Code Regs., tit. 22, § 51003, subd. (b).)

Each authorized TAR is valid for a limited period of time. (Cal. Code Regs., tit. 22, § 51003, subd. (e).) Consequently, reauthorization is necessary if continuing services are required beyond the expiration date of the authorization. A TAR for continuing services must be received before or within 10 days after the expiration of the currently authorized TAR. (Cal. Code Regs., tit. 22, § 51003, subd. (c).) Like prior authorization of services, a reauthorization for services may be granted retroactively under limited circumstances not applicable to this case. (See Cal. Code Regs., tit. 22, § 51003, subd. (b)(5).)

By its action, Alhambra sought reimbursement from the Department for skilled nursing care provided to three patients: Jeanne Bloomquist for the period of July 1, 1992, to November 12, 1994 (the date of Bloomquist's death); Grace Siebert for the period of November 3, 1992, through November 8, 1992, and November 9, 1993, through January 23, 1995; and Helen Patteson for the period of November 16, 1993, through January 23, 1995. Alhambra contended that it should be relieved from its failure to submit timely TAR's and receive reimbursement for services rendered to the three patients based on the equitable doctrine set out in *Valley View*.

The trial court held a bench trial, during which the following evidence was presented. Alhambra is a Medi-Cal health service provider that renders daily living and nursing care to about 42 elderly patients with debilitating diseases or conditions. Alhambra is under the direction of Bob Lauderdale, who began operating Alhambra in 1987, having been in the skilled nursing industry since 1976. He has an administrator's license from the Board of Nursing Home Examiners (Board), is certified as a preceptor by the Board, and has instructed applicants for administrator's licenses. After he purchased Alhambra, Lauderdale hired Nadine Cockerton to supervise Alhambra's bookkeeping. Cockerton had prior training and experience as a bookkeeper and general office manager in a nursing facility, and Lauderdale worked with Cockerton previously and believed her to be well trained and qualified. Cockerton assumed full responsibility for Alhambra's bookkeeping operations, including the processing of TAR's, because she understood the TAR process and billing procedure, and Lauderdale did not.

In November or December 1994 Lauderdale discovered that Cockerton failed to submit a timely TAR for Bloomquist, Siebert, and Patteson for the

periods set out in the complaint. In January 1995, based on specific instructions from various Department offices concerning the dates to include on the TAR's, Lauderdale submitted TAR's for the three patients seeking retroactive and prospective approval of services: Bloomquist for the period of January 1, 1994, through November 12, 1994, and Siebert and Patteson for the period from January 1, 1994, through calendar year 1995. The Department approved the applications for prospective treatment, but denied the applications to the extent Lauderdale sought retroactive approval for treatment occurring before January 1995, when the late TAR's were submitted.

Cockerton testified that in her entire career as a skilled nursing facility bookkeeper, since 1976, she had not failed to submit a timely TAR. Alhambra's expert witness, Joanne Weston, testified that the Medi-Cal billing system in place at Alhambra was adequate for a facility such as Alhambra's. While Weston testified that the system had a "hole" and she would not advise a facility setting up such a system, she noted that it was similar to that used at other like facilities. A second expert witness, Douglas Troyer, testified that an administrator of a facility such as Alhambra typically relies on a qualified bookkeeper or office manager to submit TAR's, and that such reliance was not grossly negligent. Troyer testified that TAR's submitted up to a year late is quite common, and that most facilities do not have a monitoring system to detect late TAR's, although they should have such systems. Both experts testified that administrators usually are not involved in the TAR process. Both experts further testified that it is common for facilities to process TAR's late, due to the operose nature of the TAR application procedure.

The Department's expert witness, Mary Lubin, whose experience was with corporate as opposed to independent skilled nursing facilities, opined that Lauderdale's administration of Alhambra was a "gross departure" from the standards of practice in skilled nursing facilities as defined by the American College of Health Care Administrators and the California Code of Regulations. Lubin testified that Lauderdale lacked knowledge of the TAR process and did not have any management techniques or controls with which to monitor the financial status of Alhambra or the processing of timely TAR's.

The trial court held that Alhambra was entitled to retroactive reimbursement for the skilled nursing care provided to Bloomquist, Siebert, and Patteson for the time periods in the complaint, based on the equitable doctrine set out in *Valley View*. The amount awarded to Alhambra was to be offset by any amount the Department was unable, due to Alhambra's late

TAR submittals, to collect from the federal government for its portion of the Medi-Cal services. The court found credible the testimony that Lauderdale followed the instructions of Department employees when he and Cockerton completed the TAR's for Bloomquist, Siebert, and Patteson. Furthermore, the court found that Lauderdale and Cockerton were not grossly negligent, rejecting the testimony of the Department's expert to the contrary and accepting the testimony of Alhambra's experts.

DISCUSSION

I. *The Department Gives No Compelling Reason to Reject Valley View*

In *Valley View*, the Fourth Appellate District held that a Medi-Cal service provider may rely on Civil Code section 3275 to excuse its failure to file a timely TAR in order to receive reimbursement for providing medically necessary services. (*Valley View, supra,* 146 Cal.App.3d at pp. 163, 168-169.) Civil Code section 3275 states, "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty." Thus, under the *Valley View* doctrine, where the circumstances and equities excuse compliance with the express state regulation requiring the timely submission of a TAR, a trial court may grant relief from the requirement so long as it finds that the medical service provider's omission was not grossly negligent, willful, or fraudulent. (146 Cal.App.3d at p. 168.)

The Department contends that we should reject the doctrine of *Valley View* and hold instead that the utilization controls and time limits for TAR submission should be strictly followed. We decline to so hold. Generally, there should be a " '. . . compelling reason' for departing from a decision of another Court of Appeal." (*Metric Institutional Co-Investment Partners II* v. *Golden Eagle Ins. Co.* (1994) 29 Cal.App.4th 1610, 1617 [35 Cal.Rptr.2d 233].) The Department first contends that *Valley View* "substantially undermines" its ability to determine, before services are provided, that Medi-Cal services are medically necessary. The Department provides no evidence that its bald assertion is true. It is true that the Department is unable to provide prior approval of services in those instances where a court determines that a Medi-Cal provider, because of negligence, fails to file a timely TAR. *Valley View* correctly held that administrative efficiency must give way where the equities do not favor the mindless application of administrative controls. (*Valley View, supra,* 146 Cal.App.3d

at p. 169.) The Department made absolutely no showing in the trial court that the application of *Valley View* will have any effect on the Department's overall ability to maintain proper controls on Medi-Cal services and providers.

The Department similarly argues that *Valley View* "significantly undermines the ability of the Legislature to rationally appropriate funds" for the Medi-Cal program. Its reasoning is that the Department's budget is based, in part, on services the Department must provide, and services that have not received prior approval are not included in budget data. The Department concludes that, if medical service providers are permitted to submit late TAR's pursuant to *Valley View*, then information on the medical services associated with the late TAR's will not be included in the budget data, and the Legislature will not accurately appropriate funds to the Department. The 1997-1998 budget appropriated to the Department is over $16 billion. (Assem. Bill No. 107 (1997-1998 Reg. Sess.), as amended Aug. 11, 1997, pp. 1-3, 297.) The trial court's award to Alhambra, before any offset by federal moneys, was $112,403.51. The Department fails to show that the impact of the award in the instant case, when compared to the 1997-1998 budget, is anything other than de minimis. The Department also failed to provide any evidence of the amounts courts typically award, on an annual basis, to successful plaintiffs in actions brought under the *Valley View* doctrine. Because we lack such information, the Department's claim is unsubstantiated.

The Department further claims that the prior approval of services, which is the TAR system's aim, is necessary in order to obtain utilization information from different regions of the state to ensure that Medi-Cal beneficiaries obtain the services they need. The Department fails to indicate how *Valley View* undermines its ability to obtain such information or determine levels of Medi-Cal utilization, or indeed, how it has any effect on the state's dispensation of Medi-Cal benefits. We reject the argument.

II. *The Trial Court Properly Applied Valley View to This Case*

The Department next contends that the trial court erred by applying *Valley View* to the facts of the instant case. The Department argues that *Valley View* considered significant the fact that the Department knew about the medical conditions of the 56 patients whose TAR's were submitted untimely. The Department asserts that, because the untimely TAR's in the instant case were for patients who had never had an authorized TAR, the trial court should not have applied *Valley View*.

In *Valley View* the untimely TAR's were for the reauthorization of medical services for developmentally disabled inpatients who had resided at the facility for years and whose condition remained constant. (*Valley View*, *supra*, 146 Cal.App.3d at pp. 165, 169.) The court noted these facts during its analysis of the equities involved in the case. "The condition of the patients in Valley View does not often change. The Department knows this. Upon receipt of the new TAR's, the Department duly authorized the same level of health care which it had regularly reauthorized for several years prior to October 1, 1980. . . . [¶] We are not insensitive to the absolute centrality of utilization controls in the Medi-Cal system. Administrative efficiency and the prevention of waste and fraud literally depend upon the vigorous application of such controls. Thus, had Valley View's omission been the result of gross negligence rather than mere clerical inadvertence, *had the TAR's been for outpatient beneficiaries whose prognosis was subject to frequent change rather than for the developmentally disabled whose condition rarely changed*, or had there been even the slightest suggestion of fraud, waste or financial impropriety, the result here might well have been different." (*Valley View*, *supra*, 146 Cal.App.3d at p. 169, italics added.)

Although the court noted that the Department knew of the patients' medical conditions based upon previous TAR applications, this fact alone is not crucial to the court's decision. Rather, the court focused on the static medical condition of the in-patient beneficiaries. The Department's knowledge of the patients' preexisting conditions was simply a factor to weigh in balancing the equities of the party. Although the Department in the present case did not know about the conditions of the three patients before the TAR's were submitted, the evidence shows that all three were inpatients whose conditions were relatively unchanging. Moreover, the Department approved prospective care for two of the patients' medical conditions. The Department does not dispute that the services given to the third patient, who died before a timely TAR was submitted, were medically necessary. Even though there is an element of surprise in requiring the Department to pay for the medically necessary services rendered to Bloomquist, Siebert, and Patteson, the trial court had a sufficient factual basis under *Valley View* to determine that the equities favored requiring the Department to pay for those services.

The Department next complains that the trial court granted reimbursement for much longer periods than those in *Valley View*. The Department is correct that the TAR's in *Valley View* were only 20 days late, while here, the TAR's were more than a year late, and, with respect to patient Bloomquist, more than 2 years late. *Valley View* provides no outside time period on the

equitable doctrine underlying Civil Code section 3275. Thus, the degree to which the TAR is late is, by itself, irrelevant under *Valley View*. Furthermore, we agree with the trial court that the Department has not raised a defense of laches or claims to have suffered any prejudice as a result of the delay. Because the Department has not raised any equitable defenses to Alhambra's equitable claim, we reject the Department's argument. The trial court did not err by determining that *Valley View* applied to the TAR's in this case.

The Department contends that the trial court erroneously required the Department to reimburse Alhambra for services during periods of time for which no TAR was submitted. Alhambra points to the trial court's finding that there was credible evidence that Lauderdale and Cockerton were unsure how to proceed with the late TAR's and submitted the TAR's based on instructions from Department personnel. The Department counters that the evidence on this issue is in conflict. ▪ When the trial court's factual determination is attacked on the ground that the evidence does not support it, ". . . the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court." (*Bowers* v. *Bernards* (1984) 150 Cal.App.3d 870, 873-874 [197 Cal.Rptr. 925].)

▪ The testimony of both Lauderdale and Cockerton that they followed instructions provided by Department personnel when they submitted TAR's to the Department provides substantial evidence for the trial court's finding. Although the Department is correct that the evidence conflicts somewhat, we will not second-guess the trial court's determination that Lauderdale and Cockerton presented credible evidence that they followed the Department's own instructions when they submitted the defectively dated TAR's. (*Maslow* v. *Maslow* (1953) 117 Cal.App.2d 237, 243 [255 P.2d 65] [trial court, sitting as trier of fact, is exclusive judge of credibility].)

An age-old maxim of equity is particularly appropriate here: "He who consents to an act is not wronged by it." (Civ. Code, § 3515.) The Department cannot complain that Lauderdale or Cockerton failed to submit TAR's or submitted misdated TAR's for the relevant time periods, when they were following the Department's instructions. In any case, the Department's position in these proceedings is that any TAR submitted for medical services rendered any time before January 1995 would be untimely and reimbursement should be denied. The Department would undoubtedly deny any TAR

for the missing time periods if Lauderdale or Alhambra were to submit one now. We will not require such a useless or idle act. (See Civ. Code, § 3532.) We reject the Department's argument.

The Department next argues that, because Lauderdale had no monitoring system in place for the submission of TAR's, this fact distinguishes the instant case sufficiently from the facts in *Valley View* so as to make *Valley View* inapplicable. We disagree. *Valley View* noted that the billing clerk in that case was negligent, and that the medical services provider may have been negligent in failing to exercise adequate controls over its billing process. (*Valley View, supra,* 146 Cal.App.3d at p. 168.) The court nowhere said that the presence of a monitoring system was crucial to its holding.

Essentially, the Department is simply reiterating its final argument that uncontradicted evidence establishes that Lauderdale was grossly negligent in his administration of Alhambra, and therefore equitable relief was not warranted. We hold that substantial evidence supports the trial court's determination that Lauderdale was not grossly negligent.

The Department relies on the testimony of its expert witness, Lubin, who opined that Lauderdale was grossly negligent because he did not have any techniques to monitor the financial status of Alhambra or to ensure the timely submission of TAR's. The Department also relies on the rule that the uncontradicted and unimpeached testimony of an expert witness may not be arbitrarily disregarded by the trier of fact. (*Krause* v. *Apodaca* (1960) 186 Cal.App.2d 413, 417 [9 Cal.Rptr. 10] (*Krause*).) The converse of this rule is, of course, that the trier of fact may disregard an expert's testimony and draw its own conclusions from the evidence when the evidence conflicts or the expert's testimony is rebutted. (*Wirz* v. *Wirz* (1950) 96 Cal.App.2d 171, 176 [214 P.2d 839, 15 A.L.R.2d 1129] (*Wirz*).)

Lubin's testimony was contradicted in several ways, as noted by the trial court. First, contrary to Lubin's testimony, Alhambra's experts testified that many facilities similar to Alhambra process TAR's late and that the late submission of TAR's is a common problem. Second, Weston testified that Alhambra's Medi-Cal billing procedure is adequate for that size of a facility and is similar to that used in other like facilities, while Troyer testified that most facilities do not have a TAR monitoring system, which rebuts Lubin's testimony that Alhambra's lack of a TAR monitoring system was substandard. Third, and most pertinently, both of Alhambra's experts testified that an administrator commonly relies on a billing clerk or office manager to process TAR's, which rebuts Lubin's testimony that a competent administrator would not rely on a billing clerk for TAR processing.

■ The Department's contention that we may not consider Weston's testimony in determining whether Lubin's testimony is contradicted or rebutted is simply wrong; the trier of fact is the exclusive judge of credibility and may reject expert testimony in favor of nonexpert testimony or other evidence. (*Ortzman* v. *Van Der Waal* (1952) 114 Cal.App.2d 167, 170-171 [249 P.2d 846]; 1 Witkin, Cal. Evidence (3d ed. 1986) The Opinion Rule, § 524, p. 494.) ■ Because Weston and Troyer contradicted or rebutted Lubin's testimony on various points, the trial court did not act arbitrarily by rejecting her testimony. (*Krause, supra,* 186 Cal.App.2d at p. 417; *Wirz, supra,* 96 Cal.App.2d at p. 176.)

Finally, the trial court's conclusion that Lauderdale or Cockerton did not act with gross negligence is supported by substantial evidence. Cockerton testified that she had never before had problems with the late submission of TAR's, using a billing system similar to that used in facilities similar to Alhambra's. Lauderdale testified that he relied on Cockerton because she was competent, in his experience. Alhambra's experts established that such reliance was common. The trial court could very well conclude, as it did, that such reliance did not constitute gross negligence.[1]

Affirmed. Alhambra to recover costs on appeal.

Phelan, P. J., and Parrilli, J., concurred.

A petition for a rehearing was denied October 26, 1998, and appellants' petition for review by the Supreme Court was denied January 13, 1999.

---

[1]Alhambra argues in the alternative that it was entitled to relief under the theory of quantum meruit, even if the doctrine of *Valley View* does not apply. The trial court did not reach the issue, and neither do we, because resolution of the issue is unnecessary.