**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAX PIERSON, | No. 09-17604 |
| Plaintiff-Appellee, | D.C. No. 4:06-cv-06503-PJH |
| vs. | |
| FORD MOTOR COMPANY, | MEMORANDUM [*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted May 11, 2011
San Francisco, California

Before: W. FLETCHER and N.R. SMITH, Circuit Judges, and MILLS, Senior District Judge.[**]

Dax Pierson was permanently paralyzed from his shoulders down following an

accident while he was a passenger in a rented van that was manufactured by Ford

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Richard Mills, Senior United States District Judge for the Central District of Illinois, Springfield, sitting by designation.

Motor Company.

The complaint asserted a product liability action against Ford. After the jury returned a verdict in favor of Pierson, Ford moved for a new trial and judgment as a matter of law and also to reduce the verdict in light of settlement payments that Pierson had received from other entities. The district court reduced the amount and entered judgment in favor of Pierson in the amount of $14,928,367.78.

On appeal, Ford claims that the jury's verdict was not supported by substantial evidence as to causation. Specifically, Ford alleges that Pierson did not establish that the design of the van was a substantial factor in causing his injuries. Ford asserts Pierson failed to offer expert testimony on two key points of his theory: (1) that the roof deformed on the van's first roll; and (2) that the seat unlatched during the first roll. Ford further contends that the district court abused its discretion in denying its motions, pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to exclude or strike the testimony of Martha Bidez, Ph.D., Pierson's biomechanics expert. Ford argues that Dr. Bidez's theory of injury causation was based on an accident reconstruction that had no basis in the record. Dr. Bidez relied on the accident reconstruction opinion of Robert Caldwell, even though his views were not presented to the jury.

A jury's verdict and the denial of a renewed motion for judgment as a matter

2

of law must be upheld if they are supported by "substantial evidence." *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008). Substantial evidence is "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *See id*. "A renewed motion for judgment as a matter of law is properly granted if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *See id*. (internal quotation marks and citation omitted). A district court's decision to admit or exclude expert testimony is reviewed for abuse of discretion. *See Earp v. Cullen*, 623 F.3d 1065, 1075 (9th Cir. 2010).

Causation is an essential element of a product liability case. *See Stephen v. Ford Motor Co.*, 134 Cal. App.4th 1363, 1373 (2005). If "the complexity of the causation issue is beyond common experience, expert testimony is required to establish causation." *Id*. An expert's opinions and conclusions which are based on nothing more than speculation cannot constitute substantial evidence. *See id*.; *see also Leslie G. v. Perry & Associates*, 43 Cal. App.4th 472, 487 (1996) ("[w]here an expert bases his conclusion upon . . . factors which are speculative, remote or conjectural, . . . the expert's opinion cannot rise to the dignity of substantial evidence.").

The district court did not abuse its discretion in declining to exclude or strike Dr. Bidez's testimony under *Daubert*. We find that any deficiencies with her

3

testimony went to its weight and not its admissibility.

Although there may have been some problems with Dr. Bidez's expert testimony, we conclude that there was sufficient evidence to support the jury's verdict. Even without the assistance of an expert, there was ample evidence from which the jury could determine that Pierson's head collided with the collapsed (or collapsing) roof, which resulted in his injury. The jury also knew, even without any reconstruction evidence from Mr. Caldwell, that the van rolled over; that there was a mark in the roof where Pierson's head or the seat could have hit; and that there was blood near the mark in the roof. There was no evidence of a mark on the passenger side roof near the window where Ford contended that Pierson's head had hit. Pierson testified that he put his hands up to the roof as the van began to roll over. This may have served to impede any roll toward the window that his head would otherwise have made. The jury heard evidence that the right-hand latch for the bench seat on which Pierson was sitting did not hold the seat, so that the seat rotated up and to the left, toward the center of the vehicle, as the van rolled over.

There was sufficient evidence from which the jury could conclude that Pierson's injuries were caused by the van's deficient latch and the collapsing roof. In our view, no expert was needed to establish that this occurred at a particular point during the vehicle rollover.

4

**AFFIRMED**.

*Pierson v. Ford Motor Co.*, No. 09-17604
N.R. SMITH, Circuit Judge, dissenting:

I must dissent from the majority's decision. This jury could not make its causation determination based solely on the forensic evidence presented at trial. Indeed, neither party argued to the district court that Pierson's case could be made without the assistance of expert testimony. In closing argument, Pierson's own counsel repeatedly emphasized that forensic evidence *coupled with expert testimony* shows that Pierson's seat launched during the first roll and that his head collided with the collapsing roof on the driver's side of the vehicle. The notion that this conclusion could be made without the assistance of expert testimony regarding accident reconstruction, latch strength, roof deformation, and biomechanics belies everything in this record.

It is well established under California law that "[a] product liability case must be based on substantial evidence establishing both the defect and causation . . . [and where] the complexity of the causation issue is beyond common experience, expert testimony is required to establish causation." *Stephen v. Ford Motor Co.*, 37 Cal. Rptr. 3d 9, 17 (Ct. App. 2005). Although a jury may decide what weight to give to the testimony of a witness, "the uncontradicted and unimpeached testimony of an expert witness may not be arbitrarily disregarded by

1

the trier of fact." *Lauderdale Assocs. v. Dep't of Health Servs.*, 78 Cal. Rptr. 2d 802, 808–09 (Ct. App. 1998) (citation omitted).

Pierson proceeded to trial under the assumption that he would present and rely on the testimony of his expert witnesses to establish this product liability case. Pierson's keystone expert was Robert Caldwell, an accident reconstruction specialist who developed an accident scenario describing the precise movement of the Ford van during the rollover sequence. Each of Pierson's experts relied on Mr. Caldwell's reconstruction report to develop their complementary opinions regarding latch strength, roof deformation, and biomechanics. Though each opinion was critical to Pierson's case, none was more important than Mr. Caldwell's. His reconstruction scenario provided the foundation for each of the other experts' conclusions that Pierson's injury was caused by defects in the design and construction of the Ford van.

For example, Pierson's causation theory required the jury to accept the testimony of his biomechanics expert, Dr. Martha Bidez, who was qualified to testify regarding the impact of the rollover sequence on Pierson's body. Drawing on assumptions in Mr. Caldwell's report, Dr. Bidez testified that "Pierson was injured very early in the rollover," specifically during the 20 to 30 milliseconds between 90 degrees and 135 degrees of the first roll. She claimed Pierson

2

sustained his neck injury when (1) "he was launched in the opposite direction from where he should have been going based on physics by the unlatching . . . of th[e] seat," and (2) "he had a head-on collision with the deformation of the roof as it was intruding in." These events had to happen simultaneously, because Pierson's injury was allegedly caused by the combined velocity of the roof caving in and the seat unlatching. Dr. Bidez also testified that this injury scenario could only have happened during the first roll sequence, because centrifugal forces during subsequent rolls would have pinned Pierson against the passenger (rather than driver's) side of the van.

As critical as the rollover timing was to Pierson's case, none of Pierson's experts testified at trial that (1) the seat came unlatched and "launched" during the first roll, or (2) the roof collapsed during the first roll. Among Pierson's experts, *only* Dr. Caldwell was qualified to offer this testimony based on his accident reconstruction report. However, Ford objected to Caldwell's attempts to so testify, because these conclusions were allegedly not disclosed in an expert report. Rather than explaining the basis for Caldwell's testimony, Pierson's counsel opted to move on and ultimately failed to prove these critical facts during its case in chief. To the extent other experts relied on the contents of Mr. Caldwell's reconstruction report, they did so only for illustrative or foundational purposes—not to *prove* Mr.

3

Caldwell's rollover scenario.

The majority suggests the jury heard testimony "that the right-hand latch for the bench seat on which Pierson was sitting did not hold the seat, so that the seat rotated up and to the left, toward the center of the vehicle, as the van rolled over." This testimony came from Mr. Cantor, a latch expert, who performed a hypothetical demonstration. Based on Mr. Caldwell's reconstruction report, Cantor testified about what could have happened during the rollover sequence. However, the district court admitted Mr. Cantor's testimony for a *limited* purpose and not to prove the timing of the roof collapse or what happened to Pierson during the rollover:

> During the course of this trial . . . you will see various different tests. And the tests are being offered for the limited purpose of helping—of illustrating the testimony of a witness and helping you understand generally certain scientific principles. *The tests are not being offered to show what happened to the roof of the Ford van in the rollover crash, or what happened to Mr. Pierson in the rollover crash.* They're for illustrative purposes and educational purposes for you all.

Thus, even Mr. Cantor's testimony could not establish that the roof collapsed and the seat launched during the *first* roll—the only possible scenario under which Pierson's injury could be attributed to a design defect.

Perhaps recognizing that no experts established the linchpin timing sequence in Pierson's causation theory, the majority suggests the jury could have found

4

causation even without expert testimony. This view finds no support in the record. The precise timing of Pierson's impact with the roof was critical. As even Dr. Bidez's uncontested testimony established, had Pierson's seat remained latched or unlatched at any other point during the rollover sequence, the centrifugal forces of the rolling van would have pinned Pierson to the passenger side of the van rather than launching him in the *opposite* direction toward the collapsing roof. Because the timing of Pierson's seat launch and the roof collapse are issues "beyond common experience, expert testimony [wa]s required to establish causation." *Stephen*, 37 Cal. Rptr. 3d at 17.

The "substantial evidence" in the record, to which the majority points to prove causation even without expert support—namely, a "mark in the roof where Pierson's head or the seat could have hit" and "blood near the mark in the roof"—fails to cure the timing problem. Testimony at trial established at least two potential causes of the roof dent and blood mark: (1) Pierson's collision with the driver's side roof during the first few milliseconds of the roll sequence, or (2) subsequent rolls and Pierson touching the roof of the upside-down van as paramedics removed him from the wreckage. The jury could choose to discredit Ford's view of the facts, but, given the narrow window during which Pierson's injury must have taken place, the jury could only adopt Pierson's explanation with

5

expert testimony establishing that the roof collapsed *and* the seat launched simultaneously during the critical first roll sequence. *See Beck Dev. Co. v. S. Pac. Trans. Co.*, 52 Cal. Rptr. 2d 518, 548 (Ct. App. 1996) ("[T[he fact that the trier of fact does not credit a witness's testimony does not entitle it to adopt an opposite version of the facts which otherwise lacks evidentiary support.").

It is undisputed that Pierson failed to present expert testimony to establish these essential facts in his causation theory. Because these facts could only be proven by qualified expert testimony, Pierson failed to prove causation. Causation is an essential element of his product liability case for which he bore the burden of proof. *See Stephen*, 37 Cal. Rptr. 3d at 17. I would therefore reverse.