Filed 9/18/14  Clinica De Salud Del Valle etc. v. Douglas CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CLINICA DE SALUD DEL VALLE DE SALINAS, | C071171 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201180000919CUWMGDS) |
| v. | |
| TOBY DOUGLAS, as Director, etc., | |
| Defendant and Respondent. | |

State law requires health providers to follow rigid billing procedures for Medi-Cal reimbursement claims or risk forfeiture.  (Welf. & Ins. Code, §§ 14018.5, 14087.325, subd. (e)(1); 22 Cal. Code Regs. § 51008.)  Although prior to 2003 the Department of Health Services (Department) failed to follow the law, it notified health providers that beginning on May 1, 2003, it would begin enforcing the law's

1

billing mandate and no longer accept a reconciliation procedure that did not utilize the claims processing system contractor, Electronic Data Systems (EDS). Clinica de Salud del Valle de Salinas (Clinica), a federally qualified health center, failed to submit its bills to EDS and the Department disallowed its reimbursement claims for $1.1 million.

The sole question on appeal is whether the Department's decision to commence enforcement of the law constitutes a regulation that must be adopted pursuant to the Administrative Procedure Act (APA; Gov. Code, § 11340 et seq.). We agree with the administrative law judge and the trial court that the Department's decision represents the only tenable interpretation of the governing statutory and regulatory scheme, and because it is a mere restatement of the law, it does not constitute an unlawful underground regulation. We affirm the judgment denying Clinica's petition for a writ of mandate to compel the Department to reverse its decision and grant Clinica's appeal of the reimbursement denials.

## STATUTORY AND FACTUAL BACKGROUND

**The Statutory and Regulatory Scheme**

There is only one statute and one regulation at issue. Welfare and Institutions Code section 14087.325, subdivision (e)(1) provides, in relevant part: "The department shall administer a program to ensure that total payments to federally qualified health centers and rural health clinics operating as managed care subcontractors pursuant to subdivision (d) comply with applicable federal law . . . . Under the department's program, federally qualified health centers and rural health clinics subcontracting with local initiatives, commercial plans, county organized health systems, and geographic managed care program health plans shall seek supplemental reimbursement from the department through a per visit fee-for-service billing system utilizing the state's Medi-Cal fee-for-service claims processing system contractor."

California Code of Regulations, title 22, section 51008, subdivision (a) requires that "bills for service . . . be received by the fiscal intermediary, or otherwise as designated by the Director, not later than the sixth month following the month of service and shall be in the form prescribed by the Director."

**Federally Qualified Health Plans and Medi-Cal Reimbursement**

As the trial court succinctly explained, in 1989 Congress created favorable reimbursement provisions for federally qualified health centers (FQHC) to increase access to medical care for medically underserved populations. Because California elected to participate in the federal Medicaid program through its Medi-Cal program, it must reimburse FQHC's 100 percent of their reasonable costs for furnishing care.

As allowed by federal law, California contracts with managed care organizations (MCO) to provide services to Medi-Cal beneficiaries. MCO's then contract with FQHC's. Under the 1997 federal Balanced Budget Act, states are required to make up any difference between the amounts paid by the MCO's and the amount necessary to fully reimburse the FQHC's for their reasonable costs. In 2000, however, Congress phased out cost-based reimbursement and created a prospective payment system. Nevertheless, it retained the requirement that states using MCO's must make supplemental payments to FQHC's to ensure that the FQHC receives its full rate for the provision of services.

**Clinica's Billing**

Clinica is an FQHC. Before 1999 it submitted its bills to EDS, the Department's fiscal intermediary. After entering into a managed care contract with Central Coast Alliance for Health (CCAH) on October 1, 1999, it routinely billed CCAH for the visits at issue here and sent reconciliation forms to the Department for supplemental payments. The Department would annually audit Clinica's costs and instruct EDS to pay Clinica the supplemental reimbursement needed to cover the gap

3

between Clinica's costs and its other reimbursements. Clinica no longer submitted bills to EDS.

The Department does not have the authority to adjudicate claims; EDS does. When a claim is adjudicated, the fiscal intermediary determines whether or not a claim should be paid, and the Department relies on adjudicated claims to reconcile an FQHC's costs and assure it is made whole.

On April 24, 2003, the Department sent a document entitled "Medi-Cal Managed Care Code 18 Billing Update Effective May 1, 2003" (update) to all of the FQHC's in the state. The update states, in part: "[Y]ou must bill EDS for the Medi-Cal managed care visits throughout the year if you want the visits reconciled at the end of your clinic's fiscal year. The Department will not reconcile Medi-Cal managed care visits that have not been billed and paid by EDS. . . .

"This policy will take effect on May 1, 2003. If you are not already doing so, you must begin billing the code 18 visits to EDS no later than May 1 in order to have them reconciled at the end of your fiscal year."

The update also states: "**This policy will not be retroactively applied.** Any Medi-Cal managed care visits not billed as a Code 18 visit to EDS prior to May 1, 2003 will be included in the clinic's annual Code 18 reconciliation. As noted above, any visits that occur after May 1, 2003 and are not billed and adjudicated by EDS will not be included in the annual reconciliation."

Despite the update, Clinica continued to bill CCAH and did not submit its bills to EDS. The Department audited Clinica's billing information for fiscal years 2003 to 2006 but refused to pay Clinica for bills it did not submit to the fiscal intermediary. In total, Clinica failed to properly bill for services in the amount of $1.1 million.

Following unsuccessful administrative challenges to the Department's disallowance of the reimbursement claims, Clinica petitioned the trial court for a writ of administrative mandamus, alleging that the update is an underground regulation. The

4

trial court found the update is not a regulation because it represents the " 'only legally tenable interpretation' " of the relevant statute and regulation governing billing requirements. The petition was denied and Clinica appeals.

## DISCUSSION

The APA defines "regulation" and dictates that a regulation cannot be enforced unless it is adopted pursuant to a set of prescribed procedural steps. " 'Regulation' means every rule, regulation, order, or standard of general application or the amendment, supplement, or revision or any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure." (Gov. Code, § 11342.600.) "No state agency shall issue, utilize, enforce, or attempt to enforce any guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule, which is a regulation as defined in Section 11342.600, unless . . . [it] has been adopted as a regulation . . . ." (Gov. Code, § 11340.5, subd. (a).) Because no one disputes that the Department did not promulgate the update as a regulation pursuant to the APA, the straightforward question before us is whether the May update is a regulation that must be adopted pursuant to the APA.

Clinica insists the update is an underground regulation because it implements and interprets the statute in two ways. First, in Clinica's view, the update gives specific meaning to the word "utilize" by directing FQHC's to bill EDS. And second, Clinica argues that the update imposes specific new consequences for not submitting bills to EDS throughout the year by refusing to pay any supplemental reimbursement.

The Department counters that the APA's procedural requirements do not apply where an agency's interpretation of a statute represents "the only legally tenable interpretation of a provision of law." (Gov. Code, § 11340.9, subd. (f).) "[T]he exception for the lone 'legally tenable' reading of the law applies only in

5

situations where the law 'can reasonably be read only one way' [citation], such that the agency's actions or decisions in applying the law are essentially rote, ministerial, or otherwise patently compelled by, or repetitive of, the statute's plain language." (*Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324, 336-337 (*Morning Star*); see Gov. Code, § 11340.9, subd. (f).)  The Department contends the "only legally tenable" exception applies here because the update is simply a restatement of the law.

In a clear and well-reasoned opinion, the trial court agreed.  The court explained: "The Decision at issue here concluded that the Update is not a regulation because it merely restates the unambiguous requirement that FQHCs shall seek supplemental reimbursement by 'utilizing the state's Medi-Cal fee-for-service claims processing contractor.'  The court agrees.

"Even if the language of Welfare and Institutions Code section 14087.325(e)(1) is arguably ambiguous about whether FQHCs must submit claims for supplemental reimbursement to EDS, [fn. omitted] any ambiguity is resolved by California Code of Regulations, title 22, section 51008, which requires that 'bills for service provided pursuant to the Medi-Cal Program . . . <u>be received by the fiscal intermediary</u>, or otherwise as designated by the Director, not later than the sixth month following the month of service . . . in the form prescribed by the Director.'  ([Cal. Code Regs., tit. 22,] § 51008.)

"Clinica contends that this regulation, like the statute, is ambiguous because it only provides that bills shall be received by the fiscal intermediary, and does not specify who shall submit the bills to the fiscal intermediary.  The court finds no such ambiguity. The regulation is plainly directed to the provider.  It is the provider which submits bills for Medi-Cal services.  Implicit in the requirement that bills must be received by the fiscal intermediary is that the bills must be submitted by the provider.  [¶] . . . [¶]

6

"In sum, Welfare and Institutions Code section 14087.325 and California Code of Regulations, title 22, section 51008 require claims for supplemental reimbursement to be submitted to the Department's fiscal intermediary. Thus, the Update does not 'interpret' or 'embellish' the statutory and regulatory scheme; it simply applies it. An agency does not create an underground regulation merely by enforcing existing legal requirements."

We agree. We reject Clinica's strained semantic argument that a direct comparison of the update with the plain language of the statute and regulation shows that the update does not simply restate the law, but provides specific instructions not included in either. Clinica's "direct comparison" points out that whereas the statute requires it to "utilize" the fiscal intermediary, the update requires it to "bill" the fiscal intermediary, and where the regulation states that the bills for service must be "received" by the fiscal intermediary within six months, the update requires the provider to do the billing. Clinica's argument implies that if a state agency uses slightly different words to convey the same essential meaning, it risks creating an underground regulation by embellishing the statute. Not so.

The only tenable meaning of "utilizing" the fiscal intermediary in the context of Medi-Cal billing and reimbursement is to bill the intermediary as the Department properly concluded. And while the regulation refers to the passive act of "receiving" by the fiscal intermediary, the only tenable meaning is that the provider must bill the intermediary so that the bills can be received within the requisite time frame. The Department did not embellish the law; rather, it read the law in the only way it could reasonably be read and was " 'essentially[] a reiteration' " of the statutory and regulatory scheme. (*Englemann v. State Bd. of Education* (1991) 2 Cal.App.4th 47, 62.)

*Excelsior College v. Board of Registered Nursing* (2006) 136 Cal.App.4th 1218 (*Excelsior*) is factually and legally analogous. For more than 20 years, the California Board of Registered Nursing had recognized a New York college's distance learning program as equivalent to the minimum requirements of accredited programs in

7

California. (*Id*. at p. 1226.) Thus, Excelsior graduates could apply for licensure in California. (*Id*. at p. 1224.) The board, however, changed course and notified Excelsior of the following decision: " 'Excelsior College graduates, like other out-of-state graduates, must meet the requirements set forth in California Business and Professions Code Section 2736(a)(2) and California Code of Regulations Section 1426, including the requirement of supervised clinical practice concurrent with theory, in order to be eligible for examination and licensure as a California registered nurse. This eligibility requirement applies to students who enrolled at Excelsior on or after December 6, 2003.' " (*Excelsior*, at p. 1227.) In short, because the distance-learning program did not provide sufficient clinical experience, the Board no longer deemed it equivalent to the accredited programs in California.

The parallels to the case before us are striking. In both cases, the law did not change. The agencies simply had ignored or overlooked it. The agencies were accused of relying on underground regulations, that is, regulations that did not comply with the APA, when they changed their policies and decided to follow the law. In *Excelsior* that meant changing what equivalency meant; here, it meant changing the billing procedures. But neither change in policy was based on a reinterpretation of the language of the pertinent statutory and regulatory scheme. Rather, the change in policy was corrective; that is to say, the agency decided to enforce the plain meaning of the applicable law. In both cases, the trial courts found the state agency had not adopted an underground regulation by merely announcing that it intended to enforce the law in the future. Indeed, in both cases the state agencies announced a future date when they would begin enforcing the respective statutes. In *Excelsior* we concluded, "The Board has not created an underground regulation merely by enforcing the actual language of the statute." (*Excelsior*, *supra*, 136 Cal.App.4th at p. 1239.)

Naturally, those who benefit from an agency's relaxed enforcement of a statute resist change. Graduates of Excelsior College balked at having to obtain additional

8

clinical experience to obtain licensure in California, and Clinica balks at having to change its billing procedures or forfeit reimbursement. But we reject the notion that a state agency cannot remedy its failure to follow the law without triggering the APA. We agree with our colleagues in *Excelsior* and the trial court below in concluding that a decision, perhaps belated, to enforce the unambiguous meaning of a statute and/or regulation is not a reinterpretation of the law and does not constitute an underground regulation.

Neither *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557 nor *Morning Star*, *supra*, 38 Cal.4th 324 dictates a different result. The statutes in those cases could not be reasonably read to allow for only one interpretation. Quite to the contrary, the statutes gave the state agencies considerable discretion to determine the scope of wage orders in *Tidewater* (14 Cal.4th at p. 572) and hazardous materials in *Morning Star* (38 Cal.4th at p. 338), and their interpretations of the law were not "palpably unreasonable" (*ibid.*).

Let us be clear. We agree with Clinca's premise that the update imposed a very different billing procedure from the one to which Clinica had become accustomed as well as a costly consequence–forfeiture of its right to reimbursement, a consequence the Department had failed to enforce for many years. But the gravity of the changes is not at issue. The issue is not whether a state agency changes course, but whether the change is spurred by a reasonable reinterpretation of an unambiguous statute. If, as here and in *Excelsior*, a clear statute was ignored, the change in policy to enforce it does not mean that the agency has created an underground regulation. We conclude that the only tenable reading of Welfare and Institutions Code section 14087.325, subdivision (e)(1) and California Code of Regulations, title 22, section 15008, subdivision (a) is the one the update encapsulates: that is, that in order for FQHC's to obtain supplemental reimbursement through reconciliation, they must utilize the financial intermediary, i.e., EDS, and that means they must submit the bills to EDS throughout the year. The fact

that the Department had failed to comply with the plain meaning of the statute does not render it ambiguous or excuse Clinica for its subsequent noncompliance.

We recognize that the consequence for Clinica's failure to bill EDS is harsh, despite the valuable services it provided to children. This is not an equitable action, however, but a legal one. The issues, as Clinica aptly points out, as to whether the update constitutes an underground regulation and whether the update is the only tenable interpretation of the statute or regulation present pure questions of law subject to our independent review. (*Clovis Unified School Dist. v. Chiang* (2010) 188 Cal.App.4th 794, 798.) We have concluded, as did the trial court and the administrative law judge, that the language of the statute and regulation is not ambiguous and that Clinica's strained reading of "utilized" and "received" must be rejected.

We further note that passage of Welfare and Institutions Code section 14018.5, allowing forfeiture of Medi-Cal reimbursement, reflects the Legislature's "disapproval of judicial efforts to circumvent management controls on Medi-Cal reimbursement." (*Life Care Centers of America v. CalOptima* (2005) 133 Cal.App.4th 1169, 1182.) By enacting section 14018.5, the Legislature abrogated two Court of Appeal opinions that required the Department to reimburse providers for services rendered to Medi-Cal patients despite their failure to file timely claims. (See *Valley View Home of Beaumont, Inc. v. Department of Health Services* (1983) 146 Cal.App.3d 161 and *Lauderdale Associates v. Department of Health Services* (1998) 67 Cal.App.4th 117 [both superseded by statute as stated in *Life Care Centers*, *supra*, 133 Cal.App.4th at p. 1182].) We must apply the Legislature's restrictions on Medi-Cal reimbursement and the controls it established to assure the financial integrity of the billing system. The Legislature has determined that FQHC's must utilize a financial intermediary or forfeit their right to supplemental reimbursement. Because the law is clear and unambiguous and the Department has decided to enforce the only tenable reading of the law, we must affirm the judgment denying Clinica's petition for a writ of mandate.

10

## DISPOSITION

The judgment is affirmed.

            RAYE        , P. J.

We concur:

       ROBIE        , J.

       MAURO      , J.